NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXIS TORRES,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TOWNSHIP OF NORTH BERGEN, et al.,<br><br>　　　　　Defendants. | Civil Action No.: 08-5890 (PGS)<br><br>**OPINION** |

**PETER G. SHERIDAN, U.S.D.J.**

This is a false imprisonment and malicious prosecution case brought pursuant to 42 U.S.C. § 1983. Plaintiff Alexis Torres seeks damages against the Township of North Bergen, and a police officer, Sergeant Robert Farley (collectively, the "North Bergen Defendants"). In addition, Plaintiff sued the Attorney General Peter Harvey, and the Office of the Attorney General (collectively, the "State Defendants"). Previously, Plaintiff dismissed his suit against Peter Choy, Assistant Hudson County Prosecutor, the Hudson County Prosecutors Office, the County of Hudson and the North Bergen Police Department. Plaintiff's claims arise from his arrest and prosecution for vehicular homicide. Currently, the North Bergen Defendants and the State Defendants move for judgment on the pleadings. For the following reasons, the Court grants both motions.

**I.     BACKGROUND**

On June 20, 2005, Plaintiff was allegedly driving in North Bergen, New Jersey when "a truck suddenly and without signaling cut into [his] lane." Although Plaintiff attempted to "avoid . . . the truck," they collided, causing the top of Plaintiff's car to be sheared off. As a result, Plaintiff's passenger, Rebeka Verea, was decapitated and killed, and Plaintiff was left in a coma.

Immediately following the accident, Sgt. Farley, among other officers, commenced an investigation. This included interviewing witnesses, and having hospital staff draw Plaintiff's blood to determine whether he was intoxicated at the time of the accident. On July 20, 2005, Plaintiff was arrested and released on charges of vehicular homicide and driving while intoxicated in municipal court, but the case was forwarded for review to the Hudson County Prosecutor's Office.

After Plaintiff's arrest, Attorney General Peter Harvey allegedly made three false public statements about Plaintiff. These statements are:

*   On or about August 12, 2005, Harvey compared Plaintiff to "[a] lot of young men [who] are competitive and often cannot resist the temptation to race."

*   On or about August 19, 2005, speaking to about 60 people at the behest of Verea's parents, Harvey "indicated and made reference to Alexis Torres being intoxicated on the night of the accident."

*   On or about October 19, 2005, Harvey stated that Plaintiff "had been drinking and the speeding car smashed into the rear of a tractor-trailer in North Bergen, slicing the sedan's roof . . . It killed her . . . He's being prosecuted now for death by auto. That's the reality: She's dead, and he will go to jail. Those are the choices that he made."

On December 21, 2005, and January 25, 2006, Assistant Prosecutor Peter Choy presented the charge of vehicular homicide to a Hudson County Grand Jury based in part on the testimony of Sgt. Farley. At the Grand Jury, Sgt. Farley testified that he reviewed the blood alcohol report and

it found Plaintiff was not intoxicated. In addition, Sgt. Farley testified that is was difficult to determine Plaintiff's speed because there were no skid marks. Although when questioned, Sgt. Farley estimated the speed of Plaintiff's car to be about 100 miles per hour. The Grand Jury indicted Plaintiff.

On December 7, 2006, a jury acquitted Plaintiff on all the major charges, but later he was found guilty by a Municipal Court Judge of failure to wear a seatbelt. As a result of the acquittal, on December 2, 2008, Plaintiff filed a two count complaint for malicious prosecution and false imprisonment in violation of the Fourth Amendment. Generally, Plaintiff alleges the North Bergen Defendants prosecuted him despite knowing that his blood alcohol level was "negligible" and there no was no competent evidence that he was speeding. In addition, he filed suit against the State Defendants claiming that Harvey's three public statements "contributed to the Grand Jury Indictment."

## II.   STANDARD ON MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." "The difference between Rules 12(b)(6) and 12(c) is purely procedural . . . ." *Grasso-Hochegger v. Coach, Inc.*, Civil Action No. 05-4311 (JAG), 2006 WL 1281422, at *1 (D.N.J. May 9, 2009) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir.1991)). Accordingly, a motion brought pursuant to Rule 12(c) is governed by the same standards that apply to Rule 12(b)(6) motions. *Id.*

Such a motion requires the Court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view the allegations in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)

(discussing Rule 12(b)(6)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. A court will not, however, accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff"s obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. "[F]actual allegations must be enough to raise a right to relief above the speculative level, *id.*, a determination that may require a court to "draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### III. DISCUSSION

#### A. False Imprisonment

Plaintiff's complaint pleads two counts: malicious prosecution; and false imprisonment for violations of his Fourth Amendment rights. Plaintiff's false imprisonment claim is dismissed against all the Defendants on statute of limitations grounds[1].

False imprisonment in both the common law and constitutional sense is defined as "detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). Legal process constitutes being bound by a magistrate or arraigned on charges. *Id.* Once the legal process has commenced, the offense of false imprisonment accrues, and "any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of the judicial process rather than detention itself." *Id.*

---

[1] The case may also be dismissed against the "Office of the Attorney General" and Attorney General Harvey in his official capacity due to the Eleventh Amendment. (see infra at 6.)

at 390. Accordingly, the statute of limitations for a false imprisonment claim runs once detention without legal process ends. *Wallace*, 549 U.S. at 389.

The statute of limitations for constitutional and common law false imprisonment claims in New Jersey is two years. *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007), *aff'd*, No. 08-1196, 2009 WL 3387960 (3d Cir. Oct 22, 2009). Consequently, since Plaintiff was arrested and immediately released on July 20, 2005 (Compl. ¶ 19) his claim for false imprisonment began to accrue on that day. *Wallace*, 549 U.S. at 389. And he was required to file his complaint by July 20, 2007. Instead, however, Plaintiff filed his complaint on December 2, 2008, nearly three and a half years after legal process commenced. Thus, count two of the complaint is dismissed.

### B. Malicious Prosecution

Plaintiff's remaining count is for malicious prosecution against all defendants. In order to state a claim for malicious prosecution as a Fourth Amendment violation, a plaintiff must allege five elements: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007). "Malicious prosecution differs from false arrest inasmuch as '[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more.'" *Id.* (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998)).

### 1.     The State Defendants

Plaintiff's malicious prosecution claim against the State Defendants is premised upon Harvey's statements to the public regarding Plaintiff. According to the complaint, on at least three occasions prior to Plaintiff's indictment, Harvey referred to Plaintiff in public statements as racing, intoxicated, and "drinking and speeding," and noting that he will "go to jail." Plaintiff does not allege that Harvey actually prosecuted him, only that these statements "had the clear effect of causing and creating the malicious prosecution."

The State Defendants raise numerous arguments in support of dismissal. The Court finds two arguments of merit. One is sovereign immunity and the other is that Peter Harvey cannot be liable by virtue of his supervisory responsibility over the Hudson County Prosecutors.

With regard to sovereign immunity, it bars suits against the State and its agencies for damages in federal court. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

The Court finds sovereign immunity applicable to both the Office of the Attorney General and Harvey in his official capacity. The Office of the Attorney General and Harvey in his official capacity are nothing more than arms of the sovereign State of New Jersey. *Lyons v. N.J. Dep't of Transp.*, Civil Action No. 06-2875 (NLH), 2008 WL 4911873 (D.N.J. Nov. 12, 2008). Thus, Plaintiff's claims against the Office of the Attorney General and Harvey in his official capacity are dismissed. Plaintiff's claims against Harvey in his individual capacity are subject to further analysis below.

The State Defendants also seek dismissal as to Harvey because Plaintiff's claims rest on the doctrine of respondeat superior; that is, supervisory liability. (State Br. at 8.) Under § 1983, it is

insufficient to assert liability based upon the theory of respondeat superior. *Iqbal*, 129 S. Ct. at 1948. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 1949. Consequently, in order to state a supervisory liability claim for malicious prosecution, a plaintiff must allege that the government official had "personal involvement in the alleged wrong." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In other words, a plaintiff must allege that the supervisor participated in or had actual knowledge or acquiesced to the wrongdoing. *Id.* Moreover, the allegations must be pled with particularity, requiring facts regarding the time, place and persons responsible. *Id.* at 1207-08 (citing *Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).

Harvey did not have personal involvement in the alleged malicious prosecution. Although it is undisputed that Harvey made public statements regarding Plaintiff, there are no allegations that Harvey participated in Plaintiff's prosecution, or knew his statements may be false. *Cf. Iqbal*, 129 S. Ct. at 1952. According to the complaint, Plaintiff's "innocence" may have been uncovered during the Grand Jury proceedings. But this was more than two months after Harvey's involvement in the case ended. Harvey did not know of Plaintiff's negligible blood alcohol content at the time of his statements. Moreover, regardless of timing, Harvey's statements regarding Plaintiff's operation of his vehicle do not demonstrate malicious prosecution since Plaintiff does not deny that he was speeding. Plaintiff only questions the competency of the evidence of his speeding. Plaintiff alleges Sgt. Farley was not properly trained to estimate the speed of the vehicle at a crash site. Hence, there is nothing that connects either Harvey's public statements to malicious prosecution or the prosecutors, Grand Jury or the jurors knew of, or were influenced by, Attorney General Harvey's remarks. Without personal involvement, Harvey can not be held responsible by virtue of the

7

doctrine of respondeat superior. Plaintiff's malicious prosecution claim against Harvey in his individual capacity must be dismissed.

### 2. Township of North Bergen

Plaintiff asserts claims against the Township of North Bergen as a result of Sgt. Farley's alleged wrongdoing. Pursuant to *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), a municipality can be held liable under § 1983 where the municipality "implements or executes" a policy statement, ordinance, regulation, decision or custom that is unconstitutional. *Id.* at 692.

Plaintiff's complaint against North Bergen does not set forth any policy, ordinance or custom responsible for Plaintiff's malicious prosecution. Plaintiff's entire basis for municipal liability is that "Defendants all engaged in malicious prosecution against the Plaintiff and maintained a reckless and negligent disregard for the truth and facts of the car accident involving Alexis Torres." (Compl. ¶ 42.) This conclusory allegation is insufficient as a matter of law to establish municipal liability under *Monell*. Thus, Plaintiff's malicious prosecution claim against the Township of North Bergen is dismissed.

### 3. Sgt. Robert Farley

Plaintiff's allegations regarding Sgt. Farley are very narrow. Plaintiff does not allege that Sgt. Farley arrested Plaintiff without probable cause.[2] Plaintiff's only complaint is that Sgt. Farley is that Farley testified (but was not qualified to offer an opinion) as to Plaintiff's speeding and

---

[2] The North Bergen Defendants argue that Farley had probable cause to arrest Plaintiff. (North Bergen Br. at 25.) This argument, however, is unnecessary, as Plaintiff makes no allegation that Farley arrested him without probable cause, only that Farley participated in Plaintiff's malicious prosecution by making misleading statements to the Grand Jury.

presented himself as an expert on accident reconstruction. (Compl. ¶ 35) Given Farley's alleged misrepresentation as to his qualifications, Plaintiff concludes, Farley assisted with and participated in his malicious prosecution.

Sgt. Farley seeks dismissal of Plaintiff's malicious prosecution claim against him on two grounds: (1) Plaintiff fails to state a claim for malicious prosecution because, among other things, he has not plead malice; and (2) Farley is entitled to qualified immunity. Farley is entitled to dismissal on either of these grounds.

Farley did not act with malice. Even when viewing the facts in a light most favorable to Plaintiff, the transcript of the Grand Jury proceedings illustrates that Farley did not misrepresent himself as an accident reconstruction expert.[3] Quite to the contrary, according to the transcript, when questioned, Farley consistently qualified his conclusions based on his "background and training." (Potters Cert. Ex. O at 66:15-18.) He was also cautious to note that he could not accurately estimate Plaintiff's speed or issue Plaintiff a speeding ticket because there were no skid marks: "Well, sir, it's hard to measure how fast he was going. . . . It's hard to estimate how much speed, because we don't have skid marks. We only had crash damage." *(Id.* 33:10-19. ("I can't give [] an exact number, but [] would say it's somewhere close to 100 miles an hour.") *id*. 63:4-64:10). At no point did Farley state that he was an expert on accident reconstruction.[4] In light of this testimony, Plaintiff's

---

[3] In assessing the sufficiency of Plaintiff's allegations for purposes of the North Bergen Defendants' motion to dismiss, the Court can consider the transcript of the Grand Jury proceedings in its entirety (not just Plaintiff's selective quotations) because it is integral to the complaint. *See, e.g.*, *See Cal. Pub. Employees' Retirement Sys. v. Chubb Corp.*, No. Civ. No. 00-4285(GEB), 2002 WL 33934282, at *13 (D.N.J. June 26, 2002) (denying motion to strike transcripts quoted from but not attached to complaint).

[4] Farley further repeated his Grand Jury testimony at trial. When asked by Plaintiff's counsel why he did not issue a speeding ticket to Plaintiff, Farley responded that "[t]here was no

allegations of malice are not supported by the record.[5] Nor did Farley state to the Grand Jury that Plaintiff was "intoxicated at the time of his arrest." Instead, when asked about Plaintiff's sobriety test, Farley responded to the Grand Jury that "[t]he records that we have show no." (Potters Cert. Ex. O at 35:17-20.) Thus, Plaintiff's claim against Farley for malicious prosecution must be dismissed.

Plaintiff's malicious prosecution claim can alternatively be dismissed based on qualified immunity. "The doctrine of qualified immunity protects police officers performing discretionary functions." *Palma v. Atlantic County*, 53 F. Supp. 2d 743, 767 (D.N.J. 1999); *accord Wilson v. Layne*, 526 U.S. 603, 609 (1994). Qualified immunity rests on a two-pronged objective analysis: (1) whether a plaintiff has alleged a violation of a constitutional right; and (2) whether a constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). In determining whether a constitutional right was "clearly established," the contours of the right alleged must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *receded from on other grounds by Pearson*, 129 S. Ct. 808. Meaning, the qualified immunity defense applies "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff has satisfied the first prong necessary to defeat qualified immunity because he

---

way to measure his speed" because there was "[n]o radar device or pacing [] vehicle." (Blanch Cert. Ex. B at 47:17-23.)

[5] Relatedly, Farley's testimony also demonstrates that the complaint fails to plead the third element of a malicious prosecution claim; that is, that Farley prosecuted Plaintiff without probable cause.

alleges a violation of a constitutional right, the Fourth Amendment right to be free of malicious prosecution. *Johnson*, 477 F.3d at 81. However, Plaintiff cannot satisfy the second prong because Farley did not knowingly violate the law. As set forth above, Farley did not lie about Plaintiff's sobriety to the Grand Jury; nor did Farley misrepresent himself to be an accident reconstruction expert. Farley's actions were objectively reasonable under the circumstances. He answered the questions posed to him at the Grand Jury while remaining cautious to qualify his conclusions based on his own personal expertise and the facts available to him. Thus, Farley is entitled to qualified immunity for Plaintiff's malicious prosecution claim.

### IV. LEAVE TO AMEND

In his opposition brief, Plaintiff requests leave to amend his complaint in the event Defendants' motions are granted. A motion for leave to amend pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure shall be freely given when, in the court's discretion, "justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A court may, however, deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (internal quotations omitted).

Amendment of Plaintiff's complaint would be futile. For example, in his opposition brief, Plaintiff accuses Sergeant Farley for the first time of fabricating evidence, lying about Plaintiff's sobriety, and failing to perform his "sworn duties" by negligently securing evidence or failing to

11

issue a ticket to the other driver involved in the accident. (Pl. North Bergen Opp. Br. at 9-14, 19.) Even though these allegations were in the initial complaint, they are not credible. The Court finds from a review of transcripts that Sgt. Farley's testimony at the Grand Jury and the trial were very different from the allegations set forth in Plaintiff's opposition brief. (see supra at 8-12).

### V. CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed with prejudice.

s/Peter G. Sheridan<br>
PETER G. SHERIDAN, U.S.D.J.

January 5, 2010